977 So.2d 839 (2008)
William GRAY, et ux.
v.
AMERICAN NATIONAL PROPERTY & CASUALTY CO., et al.
No. 2007-CC-1670.
Supreme Court of Louisiana.
February 26, 2008.
*841 Allen & Gooch, Brent Nicolas Carriere, Lafayette, for applicant.
Provosty, Sadler, Delaunay, Fiorenza & Sobel, H. Bradford Calvit, Alexandria; Hall, Lestage & Landreneau, Brian Steele Lestage, De Ridder; Plauche, Smith & Nieset, H. David Vaughn II, Lake Charles; Neblett, Beard & Arsenault, David O'Shee Walker, Alexandria; Charles A. "Sam" Jones, III; for respondent.
Bruce Campbell Dean, Metairie, and Marc Lloyd Frischhertz, New Orleans, for amicus curiae, Louisiana Association for Justice.
CALOGERO, Chief Justice.
The primary issue in this case is the validity of an "Uninsured/Underinsured Motorist Bodily Injury Coverage Form" (hereinafter "UM selection form") that was initialed and signed in blank by a representative of the insured, and subsequently completed and backdated by an insurance agency employee who then sent the form to the insurer. The district court found that the form was invalid and therefore granted summary judgment in favor of the plaintiff in this case ruling that the UM coverage provided by the policy was $1 million, the same amount as the liability coverage, rather than the $100,000 stated on the invalid UM selection form. Finding no error in the district court judgment, the court of appeal denied writs.
Because we agree with the district court that the UM selection form is invalid, we affirm the district court judgment. In order to be valid, a UM selection form must be completed before it is signed by the insured. Allowing a person other than the insured to complete the form after it has been initialed and signed by the insured or insured's representative would not only provide potential for abuse, confusion, and uncertainty, but would also violate the well-settled principles governing the proper completion of UM selection forms.

FACTS AND PROCEDURAL HISTORY
Plaintiff, William Gray, a school bus driver for the Beauregard Parish School Board, allegedly sustained mental and physical injuries resulting from an April 28, 2003, accident that occurred while he was driving his school bus in the course of his employment. The accident allegedly occurred when the driver of the other vehicle ran a stop sign at the intersection of Louisiana highways 113 and 1147 and struck Mr. Gray's 1993 International school bus. The other vehicle was a 1995 Ford truck that was owned by defendant, Greg Nothnagel, and was being driven by Mr. Nothnagel's minor child, Brock Nothnagel. Mr. Gray and his wife, Brenda, filed suit for damages, naming Mr. Nothnagel and his insurer, American National Property & Casualty Co. Alleging that the Nothnagel vehicle was uninsured or underinsured, the Grays also added as a defendant Coregis Insurance Co., which had issued an automobile liability policy to the school board that covered Mr. Gray and other employees.
The record indicates that the school board first contracted with Coregis to provide automobile liability insurance in 2002. By contract dated February 1, 2002, the school board engaged Norris Insurance Consultants, Inc., to serve as "insurance advisor." Norris Insurance Consultants then sought quotes on behalf of the school board for various types of property and liability insurance, including automobile liability insurance. A document listing the *842 "2002 Competitive Quotes" for the various types of insurance sought by the school board indicates that the school board sought $1 million in automobile liability insurance, but only $100,000 in UM coverage for bodily injury ("BI") and $10,000 in UM coverage for property damages ("PD").
The minutes from the March 14, 2002, school board meeting indicate that the school board members voted to purchase insurance from Coregis through Glenn Dean Insurance Agency, Inc. The amounts of coverage were not mentioned in the official minutes. An April 5, 2002, letter from Norris Insurance Consultants to Glenn Dean Insurance Agency provided written confirmation of the coverage awarded by the school board on March 14, 2002. That letter states as follows regarding automobile liability insurance:

Automobile Liability with Coregis Ins Co for a BI-PD combined single limit of $1,000,000 and subject to no deductible. Coverage applies on a comprehensive or Symbol 1 basis. Endorsement CA9933 Ed 02-99, "Employees as Insured's" will be added. Medical Payments for $1,000 per person and Uninsured Motorist BI for $100,000 and UM-PD for $10,000 are additional coverages provided. The liability premium is $129,311 and includes experience rating. Comprehensive and Collision coverage applies to specified vehicles subject to deductibles of $500 and $500 has a premium of $13,655, the grand total of both, $144,908.
According to the minutes from the April 11, 2002, school board meeting, School Board President Jim Rudd was authorized to sign the UM selection form.[1] On March 24, 2003, prior to Mr. Gray's April 28, 2003, accident, the school board agreed to renew the Coregis policy for the policy period April 1, 2003, to April 1, 2004, with the same coverages.
Following discovery in this case, the Grays filed a motion for summary judgment, seeking a ruling from the district court that the UM limits on the Coregis policy were equal to the $1 million liability limits because the UM selection form by which the school board allegedly selected the lower limit of $100,000 was invalid. Among the documents attached to the Grays' motion for summary judgment was "School Board Exhibit 2B," a UM selection form that was accompanied by a letter dated May 28, 2002, on Glenn Dean Insurance Agency letterhead from Sherrie Johnson, CISR, Commercial Underwriter, to the school board. The letter stated as follows:
Please find enclosed the above captioned form. Our records indicate that you have chosen Uninsured Motorist limits of $100,000.
If you would like to change your selection at this time, please mark the form accordingly.
Please be advised that Uninsured Motorist Property Damage is not included under the Uninsured Motorist Coverage.
Even if no change in limits are requested, please sign, date and return the form with the proper selection marked within 10 days. To complete this form, a corporate resolution authorizing an official *843 to make the selection must be attached to the form.
The UM selection form included in "School Board Exhibit No. 2B" contained the signature of School Board President Rudd on the line at the bottom of the form for "Signature-of a Named Insured or Legal Representative" and Dr. Rudd's initials on the line preceding the following statement: "I select UMBI Coverage which will compensate me for my economic and noneconomic losses with limits lower than my Bodily Injury Liability Coverage limits: $ ________ each person $________ each accident." (Emphasis in original.) The spaces for the amount of UM coverage for each person and each accident were blank, as were the spaces for the printed "Name of Insured or Legal Representative," the "Policy Number," and the "Date."
Also included among the documents attached to the Gray's motion for summary judgment was "School Board Exhibit No. 7," which appears to be the same UM selection form described above, except that the blank spaces have been filled in by someone whose handwriting is different from Dr. Rudd's. Specifically, the form has been completed to indicate that the lower limits selected are $100,000 per accident, that the "Named Insured or Legal Representative" is "Beauregard Parish School Board," that the Policy Number is XXX-XXXXXX, and that the Date the form was completed was April 1, 2002. The same cover letter quoted above is part of "School Board Exhibit No. 7."
On the basis of "School Board Exhibit No. 2B" and "School Board Exhibit No. 7," the Grays argued in their motion for summary judgment that the UM selection form was completed by a "mystery person" at some time after Dr. Rudd initialed and signed the form, and that completion of the form by a person other than the insured, particularly after the form has left the hands of the insured, renders the UM selection form invalid.
In response to the Grays' motion for summary judgment, Coregis filed a cross motion for summary judgment, seeking a ruling that the UM limits on the policy were $100,000 at the time of the accident. In its memorandum in support of its cross motion for summary judgment, Coregis listed the following pertinent "undisputed material facts":
9. By July 10, 2002, the UM rejection form was signed and initialed by Dr. Rudd, on behalf of the School Board, selecting lower UM limits.
10. Upon receipt of the UM rejection form signed and initial [sic] by Dr. Rudd, the UM rejection form was further completed by Glenn Dean's employee, Sherrie Johnson, on or by July 11, 2002, documenting the policy number, date of the policy, and the UM limits of $100,000.

11. Johnson's completion of the form documented the School Board's agreement to set UM limits at $100,000.
(Citations to attachments omitted.) Coregis referred to Ms. Johnson's deposition testimony, which was attached to its cross motion for summary judgment as "Exhibit C," in support of items 10 and 11 quoted above. Coregis argued that Ms. Johnson had authority to complete the UM selection form on behalf of the school board, and that Ms. Johnson's actions had validly "reformed" the policy to reflect the intent of the parties.
Following a hearing in the matter, the district court granted the motion for summary judgment filed by the Grays, and denied the cross motion for summary judgment filed by Coregis. In oral reasons for judgment, the district court found that the *844 UM selection form "was not properly filled out by the required party" because "parts were left blank and later filled in by an insurance company employee, who had no authority to act on behalf of the party who must reject." The district court further found that "the six affirmative steps required by the Commissioner of Insurance form were not completed as required." The district court rejected Coregis's argument that the policy had been properly reformed after it left the hands of the insured's representative, when the insurance agent filled in the missing information in a manner that clearly reflected the intent of the parties to the agreement.
The court of appeal denied the writ application filed by Coregis, finding no error in the district court decision granting summary judgment on behalf of the Grays and denying the motion for summary judgment filed by Coregis. Gray v. Am. Nat'l Prop. & Cas. Co., 07-0592 (La.App. 3 Cir. 7/11/97), 966 So.2d 1237. This court granted Coregis's application for supervisory writs. Gray v. Am. Nat'l Prop. & Cas. Co., 07-1670 (La.11/16/07), 967 So.2d 513.
When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. Because this case involves cross motions for summary judgment, "we will determine whether either party has established there are no genuine issues of material fact and [that] it is entitled to judgment as a matter of law." Duncan v. U.S.A.A. Ins. Co., 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 547. In so doing, we must be mindful of the burdens of proof imposed upon a movant in a motion for summary judgment, which are set forth as follows in La.Code Civ. Proc. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

VALIDITY OF UM SELECTION FORM
UM insurance coverage in Louisiana is governed by the provisions of La.Rev.Stat. 22:680, which provide, in pertinent part, as follows:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover *845 nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. . . .
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. . . .
This court recently addressed the validity of a UM selection form in Duncan, 06-0636, 950 So.2d 544. As this court reiterated in Duncan, Louisiana statutory law provides for UM coverage for the purpose of providing "full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance." Id. at 4, 950 So.2d at 547. Flowing from this statutory protection principle are a number of well-established jurisprudential principles. For example, this court has long held that the existence and extent of UM coverage is determined not only by contractual provisions, but also by the applicable statute, currently La.Rev.Stat. 22:680. Id., 950 So.2d at 547 (citing Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987)). Because of this fact, UM coverage will be read into any automobile liability policy "unless validly rejected." Id. at 4, 950 So.2d at 547 (citing Daigle v. Authement, 96-1662, p. 3 (La.4/8/97), 691 So.2d 1213, 1214; Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991)).
This court has further held that the statutes providing for UM coverage in the absence of a valid rejection or selection of lower limits must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed. Id., 950 So.2d at 547 (citing Roger, 513 So.2d at 1130). Any exclusion from coverage must be clear and unmistakable. Id. at 4-5, 950 So.2d at 547 (citing Roger, 513 So.2d at 1130). Thus, "the insurer bears the burden of proving any insured named in the policy rejected in writing the' coverage equal to bodily injury coverage or selected lower limits." Id. at 5, 950 So.2d at 547 (citing Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992)).
Because the insurer bears the burden of proving a valid rejection of UM coverage or selection of lower limits, when the Grays sought summary judgment in this case, they did not bear the burden of proving that the UM rejection form at issue is invalid. Thus, they were not required *846 "to negate all essential elements of [Coregis's] claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to [Coregis's] claim, action, or defense." La.Code of Civ. Proc. art. 966(C)(2). We find that the documents attached to the Grays' motion for summary judgment were sufficient to point out to the court an absence of proof for an essential element of Coregis's defense. The UM selection form presented by the Grays did not meet the requirements imposed by the Insurance Commissioner because the spaces for the amount of lower UM coverage for each person and each accident were blank, as were the spaces for the printed "Name of Insured or Legal Representative," the "Policy Number," and the "Date."
Once the Grays had successfully pointed out the absence of proof of an essential element of Coregis's defense, the burden shifted to Coregis to "produce factual support sufficient to establish that [it would] be able to satisfy [its] evidentiary burden of proof at trial." La.Code Civ. Proc. art. 966(C)(2). If Coregis failed to do so, La. Code of Civ. Proc. art. 966(C)(2) provides that "there is no genuine issue of material fact," and the Grays would be entitled to summary judgment in their favor. In this case, rather than simply opposing the Grays' motion for summary judgment, Coregis elected to file a cross motion for summary judgment. Thus, we will consider the documents attached to Coregis's cross motion for summary judgment both in opposition to the Grays' motion for summary judgment and as support for Coregis's cross motion for summary.
Ultimately, then, determination of whether either the Grays or Coregis are entitled to summary judgment in this case depends on whether Coregis carried its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial  i.e., by producing a valid UM selection form by which the school board selected UM coverage limits lower than the $1 million liability coverage limits. If Coregis carried that burden of proof, it is entitled to summary judgment. On the other hand, because we have already found that the Grays pointed out to the court that there is an absence of factual support for one or more elements essential to Coregis's claim, action, or defense, the Grays are entitled to summary judgment if Coregis failed to carry its burden of producing evidence sufficient to satisfy its burden of proving the validity of the UM selection clause. Thus, we must examine the evidence in the record to determine whether Coregis presented sufficient evidence to show that the school board selected UM coverage limits lower than the liability limits on the policy.
Coregis claims in this case that the school board validly selected UM coverage limited to $100,000, rather than UM coverage equal to the limits of liability ($1 million in this case), which is provided by Louisiana law in the absence of a valid rejection or selection of lower limits. See La.Rev.Stat. 22:680(1)(a)(i). In support of that argument, Coregis points to the form that was initialed and signed in blank by Dr. Rudd, and subsequently completed by Ms. Johnson, an employee of Glenn Dean Insurance Agency.
The UM selection form that Coregis relies upon is the form prepared for that purpose by the Louisiana Commissioner or Insurance. In Duncan, this court noted as follows:
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to *847 indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to.
06-0363 at 13, 950 So.2d at 552. Thus, the court found in Duncan that a form that omitted the policy number was invalid.[2]Id.
In this case, Coregis claims that all six of the tasks required by the Insurance Commissioner's form were completed, thereby making the form valid under this court's Duncan decision. Coregis admits that several of the required tasks were not completed before the form was initialed and signed by Dr. Rudd, nor even before Dr. Rudd mailed the form back to Glenn Dean Insurance Agency. However, because Ms. Johnson completed the form in a manner that reflected the intent of the parties, Coregis urges this court to reverse the district court judgment and find that the school board validly selected UM coverage limited to $100,000, rather than UM coverage equal to the $1 million automobile liability coverage limit that would be provided by Louisiana law if the UM selection form is invalid.
On the other hand, the Grays argue that the UM selection form is not in compliance with Louisiana law because it was signed in blank and subsequently completed and backdated by an insurance agency employee. Thus, the Grays assert, the form is invalid such that the UM coverage under the policy is equal to the automobile liability coverage limits of $1 million.
Following our review of the documents presented in support of and in opposition to the cross motions for summary judgment in light of Louisiana law on the subject, we affirm the district court's finding that the UM selection form in this case was invalid. Construing La.Rev.Stat. 22:680 liberally and its exceptions strictly, as we are required to do, we find that Coregis failed to carry its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial  i.e., by producing a valid UM selection form by which the school board selected UM coverage limits lower than the $1 million liability coverage limits.
Our decision in Duncan contains a detailed history of the Louisiana statutory provisions and jurisprudential rules that have governed an insured's decision to reject UM coverage or select lower UM coverage limits. As we explained in Duncan, prior to the Louisiana Legislature's decision in 1997 to authorize the Louisiana Insurance Commissioner to prescribe a UM selection form, insurers were authorized to design their own forms. 06-0363 at *848 5-6, 950 So.2d at 548. In the Tugwell decision, this court stated that "the insurer must place the insured in a position to make an informed rejection of UM coverage." 609 So.2d at 197. The legislature's decision to authorize the Insurance Commissioner to prescribe a form was undoubtedly motivated, at least in part, by a desire to assure that insureds are indeed placed in a position to make an informed decision when presented with a UM selection form.
In this case, the insurance agent did provide the insured with a copy of the UM selection form prescribed by the Louisiana Insurance Commissioner. However, under this court's prior jurisprudence, an insurer also has an affirmative duty to place the insured in a position to make an informed decision, not just to present the required form for the signature of the insured or the insured's representative. We do not believe that presenting the insured with a blank form and asking for the initials and signature of the insured's representative alone was sufficient to fulfill the insurer's affirmative duty in this case. The insured's representative in this case initialed the space in front of the option for selecting UM coverage lower than the limits of the liability coverage, but failed to fill in the space for specifying the amount of coverage desired. In fact, four of the "six tasks" required by the Insurance Commissioner for a valid selection of lower UM coverage limits were not completed until after the insured's representative sent the form to the insurance agent.
Further, when the insurer's agent filled in the blank for the "Date" the form was signed, she backdated the form to indicate that it was completed on April 1, 2002, the date the policy period began. In fact, Ms. Johnson inserted April 1, 2002, in the space provided for the date the UM selection form was completed, despite the fact that the school board did not authorized Dr. Rudd to sign the form until its April 11, 2002, meeting, and the fact that her letter forwarding the form to the school board was not sent until May 28, 2002, almost two months after the date she inserted. According to Ms. Johnson's deposition testimony, her "best guess" concerning the actual date she completed the UM selection form was July 11, 2002, which was the date she mailed the UM selection form to the insurance company. Under the circumstances, we cannot say that Coregis produced sufficient, credible evidence to show that the school board selected lower UM coverage limits than the $1 million liability coverage limits provided by the policy.
A decision in favor of Coregis in this case would insert the potential for abuse, confusion, and uncertainty into a process designed to prevent those exact concerns. Allowing an insurance agent or insurance company employee to complete a UM selection form after it leaves the hands of the insured or insured's representative would provide an opportunity for an unethical agent or insurer to fill in a lower UM coverage limit different from the amount the parties have agreed upon. And, even the possibility that an agent or insurer could somehow manipulate the amount of coverage provided without the insured's knowledge and/or consent undermines the purpose for which the Insurance Commissioner has been authorized to prescribe a UM selection form.
In Duncan, we stated as follows:
[T]he legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to *849 that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
06-0363 at 14-15, 950 So.2d at 553 (emphasis added). We now hold that compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the "six tasks" identified in Duncan by someone at sometime. Instead, we find that, in order for the form to be valid, the six tasks must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured's representative signifies an acceptance of and agreement with all of the information contained on the form. An insurer who is unable to prove that the UM selection form was completed before it was signed by the insured simply cannot meet its burden of proving by clear and unmistakable evidence that the UM selection form is valid.
It is true that in this particular case the UM selection form, as completed by the insurance agency employee after it left the hands of the insured's representative, apparently reflected the agreement of the parties to select UM coverage limits of $100,000. However, this court has long held that the intent of the parties does not control in this area of the law. This court stated as follows in Roger:
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(1)(a),[3] the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection.
513 So.2d at 1130 (citations omitted), quoted in Duncan, 06-0363 at 5, 950 So.2d at 547.
This court has also previously rejected arguments similar to Coregis's argument that Ms. Johnson's actions were a valid reformation of the policy. In both Samuels v. State Farm Mut. Auto. Ins. Co., 06-0034, p. 9 (La.10/17/06), 939 So.2d 1235, 1241, and Duncan, 06-0363 at 15, 950 So.2d at 553, this court distinguished failures to comply with the UM selection form requirements established by the Insurance Commissioner from other types of clerical errors in insurance contracts that might be subject to reform. The failure to comply with the requirements for confecting a valid UM selection form are not subject to reformation.
Any perceived unfairness to the insurer resulting from this decision is, we believe, offset by the fact that the insurer had both the authority and the opportunity to assure that the UM selection form in this case was completed properly. In fact, we note that the language of Ms. Johnson's cover letter to the school board when she sent the UM selection form for Dr. Rudd's signature seemed to invite Dr. Rudd to do exactly what he did. That letter instructed Dr. Rudd that if he wanted to change the selection of UM coverage limits from the $100,000 previously chosen by the *850 school board, he should "mark the form accordingly." However, the letter then stated that "if no change in limits are requested, please sign, date and return the form with the proper selection marked within 10 days." With the exception of providing the date of his signature, Dr. Rudd did exactly as he was instructed. Nowhere in the letter was Dr. Rudd instructed to fill in the space for the amount of lower UM limits, or any of the other blank spaces. Further, once the incomplete form was received from the school board, nothing prevented the agent from returning the form to Dr. Rudd with instructions for properly completing the form. The insurer, not the insured, has the responsibility of assuring that the form is completed properly, and Coregis did not fulfill that responsibility in this case.
Finally, we note that, even if we believed that the UM selection form discussed above was valid, we would have difficulty finding in favor of Coregis under the record evidence in this case. We have until now focused our discussion on the validity of the UM selection form that was initialed and signed by Dr. Rudd, then completed and backdated by Ms. Johnson, because that was the focus of the district court's oral reasons for judgment, as well as the focus of the parties' arguments in this court. However, the record in this case includes several other documents that increase the confusion concerning the UM coverage limits provided by the 2002-2003 policy. For example, "School Board Exhibit No. 1A" is a copy of Coregis Policy No. 651-01191, for the policy period April 1, 2002, to April 2, 2003, that states on the declaration page that the amount of UM coverage is $250,000. Both the UM selection form and the UM-BI endorsement attached to "School Board Exhibit No. 1A" are completely blank, although a "General Change Endorsement" attached to the policy states that the UM limit "is amended to read $100,000 in lieu of $250,000."
Even more problematic is the exhibit designated "Johnson # 3," which is a UM selection form dated April 11, 2002, the same date the school board authorized Dr. Rudd to sign the UM selection form. "Johnson # 3" is signed by Dr. Rudd and initialed by Dr. Rudd in the space in front of the following statement: "I elect UMBI Coverage which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage." (Boldface emphasis in original; italics emphasis added.) All of the necessary blanks are completed on that form, except the space for the "Policy Number." The confusion arising from the presence of these documents in the record further supports our finding in this case that Coregis failed to carry its burden of producing a valid UM selection form by which the school board selected UM coverage limits lower than the $1 million liability coverage limits.

DECREE
Because Coregis failed to carry its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial, as required by La.Code Civ. Proc. art. 966(C)(2), the district court properly granted the motion for summary judgment filed by the Grays and properly denied the cross motion for summary judgment filed by Coregis. Accordingly, the district court judgment is affirmed and the case is remanded to the district court.
AFFIRMED AND REMANDED.
VICTORY and TRAYLOR, JJ., dissent and assign reasons.
WEIMER, J., concurs in the result and assigns reasons.
*851 VICTORY, J., dissenting.
I would overrule the trial court's grant of the motion for summary judgment since, in my view, there were material issues of fact that precluded summary judgment in this case.
TRAYLOR, J., dissenting.
The majority is refusing to honor a contract in which both parties to the contract got exactly what they bargained. There is no dispute as to their intent  both parties agree that the School Board intended to insure themselves for $100,000 in bodily injury coverage and $10,000 for property damage, and that Coregis intended to offer the same. Further, the documentary evidence supports their contentions. This is not a case in which a nonparty to the contract relied on the contents of the contract to his detriment  the third-party beneficiary of the insurance contract did not base his actions on the higher uninsured motorist limits.
All that is required by La.Rev.Stat. 22:680 for a valid selection of lower uninsured motorist coverage limits is that the selection be made "on a form prescribed by the commissioner of insurance . . .," and that the form is "provided by the insurer and signed by the named insured or his legal representative." This was done in this case, without dispute.
The majority states that in this case, in which a selection form was completed and signed completely in accord with the insured's wishes, the insurer did not "place the insured in a position to make an informed decision," when the School Board had made an informed decision on limits of UM coverage prior to receiving the selection form, and had, in fact, made the same selection several times in the past with other insurance companies.
Finally, the majority states that "[a] decision in favor of Coregis in this case would insert the potential for abuse, confusion, and uncertainty" into UM coverage selection, and would "provide an opportunity for an unethical agent or insurer to fill in a lower UM coverage limit different from the amount the parties have agreed upon." Yes, an unethical agent or insurer could fill in an amount different from that agreed upon, just as unethical party could do with any UM selection form, whether or not the blanks were filled out by the insured. In such a case, there are various legal means to correct the abuse, penalize the wrongdoer, and protect the insured. Here, though, there is no such "unethical" behavior  the two parties to the insurance contract completed the contract for exactly what they bargained, and the majority has engaged in unnecessary speculation in order to reach a manufactured result.
WEIMER, J., concurs in the result.
Although the main focus in this matter is the validity of the UM selection form that was initialed and signed by Dr. Rudd, then completed and backdated by Ms. Johnson, the record includes several other documents that increase the confusion concerning the UM limits provided by the Coregis policy. See Gray v. American National Property & Casualty Co., XXXX-XXXX, at 842 n. 1 and 850. Given the conflicting forms, I would conclude that Coregis did not sustain its burden of proving a valid selection of lower UM limits.
In my opinion, there is a vast difference between the numerous troublesome documents related to selection of lower limits by the school board in this case and the waiver of UM coverage executed by the named insured in Duncan v. U.S.A.A. Insurance Co., 06-0363 (La.11/29/06), 950 So.2d 544. The issue in Duncan was *852 whether the UM statute requires that the blank for the policy number contained on the insurance commissioner's form be filled in to effectuate a valid waiver of UM coverage. Were Duncan before us today, I would again vote to reverse the summary judgment in favor of the plaintiff for the reasons cited in my dissent and my dissent on denial of re-hearing. At the same time, I agree that based on the record in the instant case, the so-called selection of lower limits by the school board did not result in a valid selection of lower limits, thus making summary judgment in favor of plaintiffs appropriate.
I do not support the entirety of the majority's analysis. Particularly, I disagree with the imposition of a requirement that "a UM selection form must be completed before it is signed by the insured" to be valid. See Gray, XXXX-XXXX, at 841. As such, I concur in the result only.
NOTES
[1] The record contains at least two UM selection forms that were signed by Dr. Rudd. The first form is dated the same day as this school board meeting, April 11, 2002, and indicates that the school board selected UM limits equal to the amount of liability insurance. The second form is dated April 1, 2002, and indicates that the school board selected UM limits lower than the amount of liability coverage. It is the second form, further described in detail in this opinion, that is the focus of the district court judgment and the arguments of the parties in this case.
[2] Following Duncan, this court acknowledged in Carter v. State Farm Mutual Automobile Ins. Co., 07-1294 (La.10/5/97), 964 So.2d 375, that "the Commissioner of Insurance's regulations specifically allow omission of the policy number if it does not exist at the time UM waiver form is completed." In fact, Insurance Commissioner Bulletin LIRC 98-03 provides as follows: "In the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted." The record in this case indicates that the policy number was available when the UM selection form(s) were signed. Therefore, we will continue to refer to the "six tasks" necessary for a valid UM selection form in this case. We note however that a case where the policy number is not available, only five "tasks" would be necessary for a valid UM selection form.
[3] Now, La.Rev.Stat. 22:680.