DOWNING, J.
|2This appeal turns on whether Danny K. Taylor’s selection of lower limits of uninsured/underinsured motorist (UM/UIM) coverage executed on December 22, 1999 was valid and effective in connection with changes to a policy of automobile liability insurance effective on January 4, 2000. Concluding that the UM/UIM selection/rejection waiver was prospectively valid and effective under the facts of this case, we reverse the judgment of the trial court in part; we render in part; and we dismiss the matter with prejudice.
PERTINENT FACTS AND PROCEDURAL HISTORY
One of the appellants, Lamarylis Taylor, was involved in an automobile accident with two other vehicles in May 2002. The insurers of one of the other drivers settled Ms. Taylor’s claims for the policy limits of $10,000. This driver was released prior to suit being instituted. Mr. and Mrs. Taylor filed suit against the other driver, but she and her insurer were voluntarily dismissed prior to trial. Also prior to trial, the Tay-lors’ insurer, State Farm Mutual Automobile Insurance Company (State Farm), tendered $10,000 to Ms. Taylor representing the primary policy’s listed ‘per person’ limits UM/UIM coverage, together with $10,000 representing medical payments under the primary policy.
The matter proceeded to trial against State Farm for additional damages allegedly due as a result of an ineffective UM/ UIM selection/rejection waiver and against State Farm Fire and Casualty Company (State Farm Fire) under umbrella UM/ UIM coverage. The parties stipulated that one of the other drivers was liable. The issues of causation and damages were tried to a jury. The issues of UM/UIM coverage under the two policies were tried as a bench trial.
At the time of the accident, The Taylors’ primary policy had liability limits of $250,000 per person, $500,000 per accident. The umbrella policy afforded coverage up to $1,000,000. It is undisputed that State Farm Fire required the |3Taylors to increase their primary automobile liability limits from $100,000/$250,000 to $250,000/ $500,000 in order to renew their umbrella coverage effective January 4, 2000. State Farm sent the Taylors several items of correspondence to that effect. On December 22, 1999, Mr. Taylor went to his State Farm agent’s office and signed a new UM/ UIM selection/rejection waiver, which form showed a selection of coverage of $10,000/$20,000. The Taylors’ primary policy limits were increased, and their umbrella policy was renewed.
At trial the jury awarded $77,813.84 in damages. The trial court ruled as well, *435 concluding that the Taylors’ UM/UIM selection/rejection waiver was invalid and that, therefore, the UM/UIM coverage under the primary policy equaled the policy limits. The trial court did not address coverage under the umbrella policy because the amount of the jury verdict did not reach the $250,000 threshold needed to place that policy at issue. Judgment was entered in accordance with the jury verdict and the trial court’s ruling.- The judgment awarded damages found by the jury, giving credit for the $30,000.00 already paid to the Taylors. The judgment declared that the UM/UIM waiver executed on December 22, 1999 was contrary to law and that the Taylors were entitled to uninsured motorist coverage to the extent of $250,000 per person, $500,000 per accident.
State Farm now appeals, asserting one assignment of error:
The trial court committed error in finding that the selection of lower limits by the named insured, which was done in contemplation of increased liability limits under the policy, was invalid because it was completed prior to the effective date of the increase in liability limits under the policy.
The Taylors answer the appeal, asserting as error:
With respect to the issues raised in their Answer to Appeal, appellees claim that the jury erred in failing to award adequate damages to Lamarylis Taylor and in failing to award any damages to Danny Taylor for loss of consortium.
| «DISCUSSION

Form of UM/TJIM Waiver

An insurer has the burden of proving by clear and unmistakable evidence that a UM/UIM selection form is valid. See Gray v. Am. Nat’l Prop. & Cas. Co., 07-1670, pp. 8-9 (La.2/26/08), 977 So.2d 839, 849. In this regard, however, La. R.S. 22:1295(1)(a)(ii) provides in pertinent part that “[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.”
In order for a UM/UIM form that rejects or lowers coverage to be valid, the six tasks outlined in Duncan v. U.S.A.A. Ins. Co., 06-0363 (La.11/29/06), 950 So.2d 544, “must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured’s representative signifies an acceptance of and agreement with all of the information contained on the form.” Gray, 07-1670 at p. 14, 977 So.2d at 849. In Duncan, the supreme court listed six requirements for an enforceable UM rejection form [1]
Before we determine whether the statute requires that all aspects of the form be complied with, let us now consider what the prescribed form entails. Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
*436 Duncan, 06-0363 at pp. 11-12, 950 So.2d at 551.
In the matter before us, the trial court found that “the UM selection form appears to be valid in all respects.” No party-disputes this. Under La. R.S. 22:1295(l)(a)(ii), therefore, the UM/UIM selection/rejection form selecting lower limits is presumed to be valid.

\zEffectiveness of UM/UIM waiver

The issue in controversy, the effectiveness of the UM/UIM waiver in connection with changes in liability coverage, arises from State Farm Fire’s requirement that the Taylors increase their primary automobile liability policy coverage limits to $250,000/$500,000. The testimony and evidence in the record show that Mr. Taylor signed the new UM/UIM selection/rejection form in connection with the change in policy limits. In that regard, a letter from State Farm Fire to the Taylors informed them that their umbrella policy would not be renewed because they had not signed and returned a UM/UIM selection/rejection form. The letter informed the Tay-lors that coverage could be reinstated if the policy limits were increased and the UM/UIM selection/rejection form was returned before the expiration date of the policy.
The Taylors do not contest the evidence or that it was their intent to sign the UM/UIM seleetion/rejection form to comply with State Farm Fire’s requirements. In brief, the Taylors concede that they “do not argue with this basic position.” Instead, they argue that the UM/UIM selection/rejection form could only be executed after the effective date of the policy. They attempt to distinguish cases where the UM/UIM selection/rejection form executed prior to the issuance of the policy would become effective when the policy was issued, arguing that here they were not purchasing a new policy. The UM statute, however, makes no such distinction.
In this regard, La. R.S. 22:1295(1)(a)(ii) provides in pertinent part: “Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms.” (Emphasis added.) Accordingly, without the rejection of UM coverage or the selection of lower limits of UM coverage in connection with a change in the limits |fiof liability, La. R.S. 22:1295(l)(a)(i) mandates UM coverage in an amount equal to the liability coverage.
The Taylors further argue that allowing them to reject or select lower UM/UIM limits in anticipation of changes to automobile policy limits is contrary to the requirements of La. R.S. 22:1295. The statute, however, does not require a specific effective date for the UM/UIM waiver. It only requires that “[sjuch rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.” La. R.S. 22:1295(l)(a)(ii). As discussed above, the UM/UIM selection/rejection waiver form at issue complies with the requirements of law.
State Farm further supports its position by pointing to the instructions in Louisiana Insurance Ratings Commission Bulletin 98-03, providing in pertinent part as follows:
[[Image here]]
For the purposes of the Act, a form is “executed” on the date the policy or the policy endorsement takes effect. For example, with a new or renewal policy, a UM form completed before September 6, 1998, is not “executed” until the date the policy takes effect, i.e., the beginning of the policy period.
*437 • A policy effective date is not explicitly stated on the UM Form because this form is conclusively presumed to become a part of the contract. The date shown on the insurance contract is sufficient for identifying the UM Form effective date.
In addition, State Farm cites numerous eases showing that UM/UIM selections or rejections were validly made prior to the effective date of the respective policies.
In the matter before us, clear and unmistakable evidence shows that the UM/ UIM selection/rejection waiver form was completed in connection with an increase in policy limits and that there is no uncertainty regarding the policy for which the form was completed. The form complies with La. R.S. 22:1295 and meets all the Duncan requirements. Requiring that the form be executed contemporaneously with or subsequent to the effective date of changes in policy 17limits, where there is no uncertainty between the parties regarding the policy to which the form pertains, would be to expand the law beyond its mandate and “would be a hyper-technical, absurd result.” See Dixon v. Direct General Ins. Co. of Louisiana, 08-0907, p. 7 (La.App. 1 Cir. 3/27/09), 12 So.3d 357, 362.
Accordingly, we conclude that the Tay-lors have failed to rebut the presumption that they knowingly selected a lower limit. La. R.S. 22:1295(l)(a)(ii).

Completion of UM/UIM Waiver Form

The Taylors also argue that the UM/UIM selection/rejection waiver form is invalid because the blanks were filled out by a State Farm agent’s employee. It is undisputed that the employee had filled out all the blanks on the form including the selected limits of $10,000/$20,000. Mr. Taylor acknowledges that the document was filled out before he signed the form and that he signed it. He does not dispute that he initialed the form. Nevertheless, he argues that these actions deprived him of his right to make an informed decision as to his coverages. We disagree.
As discussed above, the UM/UIM selection/rejection waiver form complies with all Duncan tasks and was executed after the form was filled out as required by Gray, 07-1670 at p. 14, 977 So.2d at 849. The Taylors have made no showing that their choices were somehow limited. Mr. Taylor could have initialed any of the five choices on the form. He could have modified the numbers written on the form and written new amounts. The law does not require that the insured fill out the form. Accordingly, we conclude that the Taylors have failed to rebut the presumption that they knowingly selected lower limits when Mr. Taylor signed the form and initialed his selection.

Conclusion

For the foregoing reasons, we conclude under the facts of this case that the trial court erred in declaring that the UM/UIM waiver executed by Mr. Taylor on December 22, 1999 was contrary to law and in adjudging that the Taylors were |8entitled to uninsured motorist coverage to the extent of $250,000 per person, $500,000 per accident.
We further conclude that the UM/UIM waiver executed by Mr. Taylor on December 22, 1999 was valid and enforceable in connection with changes in the Taylors’ policy limits effective January 4, 2000. Accordingly, we reverse the judgment of the trial court insofar as it assesses damages against State Farm beyond the amounts it has already paid.

Answer to Appeal

In their answer to appeal, the Taylors assert that the jury abused its discretion in fading to award adequate damages and was clearly wrong in failing to award any *438 damages to Mr. Taylor for loss of consortium. They suggest that in the event this court raises the damage awards, the personal umbrella policy, which the trial court did not consider, could become an issue.
Having reviewed the record, however, we conclude that the jury’s damage awards and failure to award damages for loss of consortium were not an abuse of discretion. While we may have evaluated the case differently, it appears that the jury had a reasonable basis for each of its awards or non-awards. Accordingly, we must affirm the jury’s findings. We, therefore, pretermit consideration of the applicability of the umbrella policy.
DECREE
For the foregoing reasons, we reverse the judgment of the trial court declaring that the selection of lower limits of Uninsured Motorist Coverage executed by Danny Taylor on December 22, 1999 was contrary to law and evidence and adjudging that the Taylors were entitled to UM/UIM motorist coverage under their automobile policy issued by State Farm Mutual Automobile Insurance Company with limits of $250,000 per person/$500,000 per accident.
|9We render judgment declaring that the selection of lower limits of Uninsured Motorist Coverage executed by Danny Taylor on December 22, 1999 is valid and enforceable in connection with the accident at issue.
Recognizing that State Farm has paid the limits of its UM/UIM policy prior to trial in this matter, we dismiss the Taylors’ petition against State Farm Mutual Automobile Insurance Company with prejudice. Costs of this appeal are assessed against Lamarylis Taylor and Danny K. Taylor, individually and on behalf of their minor children, Brad, Adam and Mark Taylor.
REVERSED IN PART; RENDERED IN PART; DISMISSED WITH PREJUDICE.

. In Gray, the supreme court instructed that in a case where the policy number is not available, only five "tasks” would be necessary for a valid UM selection form. Gray, 07-1670 at p. 11 n. 2, 977 So.2d at 847 n. 2.