KUHN, J.
|2The issue presented in this appeal is the validity of an uninsured/underinsured motorist bodily injury coverage form (“UM coverage form”), which purports to waive uninsured/underinsured motorist (“UM”) coverage, but bears the binder number on the application instead of a policy number.[1] The trial court found that defendant, Allstate Insurance Company (“Allstate”), had not established the unavailability of a policy number at the time the policy was issued, and, thus, the UM waiver was invalid, and the Allstate policy provided UM coverage in favor of plaintiff, Genevia Washington. The trial court ordered judgment in favor of Ms. Washington and against Allstate in the amount of the policy limit of $10,000, plus legal interest and costs. Allstate has appealed, and we find manifest error in the trial court’s finding that Allstate failed to establish the unavailability of the policy number when the UM coverage form was signed by Ms. Washington’s husband, George Washington, Jr. Thus, we conclude that the UM coverage form was “properly completed” under La. R.S. 22:680(l)(a)(ii), and we find that Allstate established a valid waiver of UM coverage by Mr. Washington. Accordingly, we reverse the trial court’s judgment.
According to the allegations of the petition, on February 5, 2006, Ms. Washington was driving a 1990 Cadillac Deville. As she approached the intersection of a state highway, a vehicle driven by Matthew Garcia struck her | .¡vehicle, resulting in injuries to Ms. Washington. Ms. Washington settled her claims against Mr. Garcia and filed suit against her own insurer, Allstate, alleging that its policy named her as an insured and provided UM coverage. In its answer, Allstate denied that its policy provided such coverage.
At trial, the parties stipulated that: 1) Mr. Garcia was one hundred percent at fault for the motor vehicle accident; 2) Ms. Washington’s damages exceeded the liability policy limits applicable to the vehicle driven by Mr. Garcia; and 3) no other insurance coverage, other than the alleged Allstate UM coverage, was available. The parties further stipulated to the authenticity and the admissibility of the following items that were introduced into evidence: 1) the Allstate policy in effect at the time of the accident, which designated Mr. and Ms. Washington as named insureds;[2] 2) the Allstate coverage application and bind *794 er provision signed by Mr. Washington, dated December 2, 2003; and 3) the UM coverage form that was signed and initialed by Mr. Washington on December 2, 2003. Ms. Washington’s counsel further stipulated that the binder number on the application was the same number reflected on the UM coverage form.[3] The parties stipulated to the amount of Ms. Washington’s medical expenses and the nature of her injuries. Further, while the parties did not dispute that the Allstate policy remained in effect as of the date of the accident, they disputed whether the policy provided UM coverage. In support of their respective positions, both parties offered the testimony of Stephanie Hebert, who owned an independent Allstate agency and had worked as an Allstate agent for fourteen and one-half years as of the |,|date of trial. The parties did not contest that an agent within her office had processed Mr. Washington’s application and UM coverage form.
Ms. Hebert acknowledged that the UM coverage form signed by Mr. Washington contained a binder number instead of the applicable policy number on the line on the UM coverage form for the policy number. She explained that the Allstate computer system prints an application, along with a binder number, and coverage is bound immediately. The binder number was used on the UM coverage form because “there is never a policy number available at the time the application” is prepared. Ms. Hebert explained that the policy number is generated after the application is processed by one of Allstate’s service centers.[4] She testified that when Mr. Washington signed the application and the UM coverage form, the policy number was not available. Initially, she stated that the process of generating a policy number took two to three days from the time the application was submitted, but she later acknowledged that one of Allstate’s service centers had probably generated the policy number within twenty-four hours. She explained that her general practice was to put aside the applications after transmitting them by facsimile to Allstate, and about three days later, she would check her applications by going into the Allstate computer system and pulling up the relevant policy numbers to confirm coverage for each respective applicant. Ms. Hebert further testified that from the time Mr. Washington initially applied for coverage in 2003, his policy had been renewed without any changes in the limits or type of coverage.
| sUnder La. R.S. 22:680, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Duncan v. U.S.A.A. Ins. Co., 06-363, p. 4 (La.11/29/06), 950 So.2d 544, 547. However, the coverage required by the UM statute is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided therein. La. R.S. 22:680(1)(a)(i). The statute provides, in part, that “[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.” La. R.S. 22:680(1)(a)(ii). Further, the form signed by the insured or his legal representative, which initially rejects coverage, selects *795 lower limits, or selects economic-only coverage, shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. Id.
In Duncan, the supreme court addressed whether the UM coverage form, prescribed for selection of UM coverage by the commissioner of insurance, must contain the insurance policy number in order for a waiver to be effective. Therein, the UM coverage form, which was executed by the insured, contained a blank line for the policy number; no policy number appeared on this line. Id. at p. 3, 950 So.2d at 546. The supreme court found that the UM statute requires that the blank for the policy number contained on the insurance commissioner’s form be filled in to effectuate a valid waiver of UM coverage. Id. at p. 1 & 13, 950 So.2d at 545 & 554. The supreme court concluded that the “failure to fill in the policy number on Ifithe form prescribed by the commissioner of insurance invalidates the UM waiver, and consequently, the UM coverage is equal to the liability limits of the policy.” Id., 06-363 at p. 13, 950 So.2d at 554.
Since Duncan, the supreme court has concluded, however, that filling in the policy number is not essential to a valid UM coverage waiver where the evidence establishes that no policy number was available at the time of the execution of the UM coverage form. See Carter v. State Farm Mut. Auto. Ins. Co., 07-1294, p. 1 (La.10/5/07), 964 So.2d 375, 376. Insurance Commissioner Bulletin LIRC 98-03 specifically provides, “[I]n the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted.” Further, in Gray v. American Nat. Property & Cas. Co., 07-1670, p. 11 n. 2 (La.2/26/08), 977 So.2d 839, 847 n. 2, the supreme court stated:
Following Duncan, this court acknowledged in Carter v. State Farm Mutual Automobile Ins. Co., 07-1294 (La.10/5/97), 964 So.2d 375, that “the Commissioner of Insurance’s regulations specifically allow omission of the policy number if it does not exist at the time [the] UM waiver form is completed.” ... The record in this case indicates that the policy number was available when the UM selection form(s) were signed. Therefore, we will continue to refer to the “six tasks” necessary for a valid UM selection form in this case. We note however that a case where the policy number is not available, only five “tasks” would be necessary for a valid UM selection form.
Because the question of whether the policy number was available at the time the UM coverage form was executed is a factual issue, the trial court’s finding regarding this issue is subject to the manifest error standard of review. See Reed v. State Farm Mut Auto. Ins. Co., 03-0107, p. 14 (La.10/21/03), 857 So.2d 1012, 1021. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from |7the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine that the record establishes that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Id. If the factual findings are reasonable in *796 light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. This is not to say, however, that factual determinations cannot ever, or hardly ever, be upset. Brewer v. J.B. Hunt Transport, Inc., 09-1408, 09-1428, p. 13 (La.3/16/10), 35 So.3d 230, 240. Although deference to the factfinder should be accorded, because appellate courts have a constitutional duty to review both law and facts, they have the right and the obligation to determine whether a trial court’s factual finding is clearly wrong based on the evidence or clearly without evidentiary support. Id.
Based on the evidence in the present case, we find that the record lacks evidentiary support for the trial court’s finding that Allstate failed to establish the unavailability of the policy number at the time Mr. Washington executed the UM coverage form. We find the trial court’s finding in this respect to be unreasonable and clearly wrong. Ms. Hebert’s testimony, which established that the UM policy number was never available when the insurance application was processed, was uncon-tradicted. The evidence establishes Mr. Washington executed the UM coverage form on the same date that he completed the application for insurance. Further, Ms. Washington submitted no evidence establishing that a policy number 18was available when Mr. Washington executed the UM coverage form. Because the evidence establishes the policy number was not available when the UM coverage form was completed, the insertion of the binder number on the application on the UM coverage form in the space designated for a policy number did not invalidate the UM coverage form. See Carter, 07-1294 at p. 1, 964 So.2d at 376; Clement v. State Farm Mut Auto. Ins. Co., 08-0014, p. 7 (La.App. 1st Cir.6/6/08), 992 So.2d 506, 509, writ denied, 08-1503 (La.10/3/08), 992 So.2d 1020.
The UM coverage form was properly completed and signed, creating a rebutta-ble presumption that Mr. Washington knowingly rejected coverage. See La. R.S. 22:680(l)(a)(ii). This presumption was not rebutted by Ms. Washington, and the waiver by Mr. Washington is effective as to Ms. Washington. See La. R.S. 22:680(l)(a)(i). Thus, we reverse the trial court’s judgment in favor of Ms. Washington and dismiss her claims with prejudice. Appeal costs are assessed against Ms. Washington.
REVERSED AND RENDERED.

. Plaintiff does not dispute that the UM coverage form at issue was in the form prescribed by the commissioner of insurance. See La. R.S. 22:680(1)(a)(ii) (redesignated as La. R.S. 22:1295(1)(a)(ii) by authority of 2008 La. Acts, No. 415, § 1, effective January 1, 2009). Regarding the manner in which the form was executed, plaintiff does not assert any deficiencies based on the dictates of Duncan v. U.S.A.A. Ins. Co., 06-363, p. 4 (La.11/29/06), 950 So.2d 544, 547, other than the policy number does not appear on the form. Plaintiff stipulated that the form was otherwise valid.

. The 1990 Cadillac Deville was one of two vehicles covered under the policy.

. This application resulted in the issuance of the Allstate policy at issue.

. Ms. Hebert stated there were probably four to five Allstate service centers within the country, but she did not know which service center had actually processed Mr. Washington’s application.