CRAIN, J.
Ferrara Fire Apparatus, Inc., appeals a summary judgment ordering it to pay Red Star Consultants, LLC, and Fepro Fire Protection Co., jointly, $576,436.00, pursuant to an oral contract, and dismissing its reconventional demand. Finding genuine issues of material fact, we reverse.
FACTS
Plaintiffs, Red Star and Fepro, instituted this suit claiming Ferrara Fire hired Red Star to assist in marketing and selling fire trucks in China, and hired Fepro, a company based in China, to assist in sales and service matters. Plaintiffs contend their agreements with Ferrara Fire included payment of commissions associated with *610 truck sales. Plaintiffs allege their joint efforts resulted in the sale of four fire trucks. According to plaintiffs, Ferrara Fire was paid more than 2.5 million dollars for the sales, representing 90% of the purchase price for the trucks, with 10% withheld subject to obtaining a product certification required by Chinese authorities (the CCC certification). Plaintiffs claim Ferrara Fire stopped pursuing the CCC certification and has refused to pay the amounts due based on an alleged internal policy of only making commission payments after receiving payment in full. Plaintiffs assert claims on open account, unjust enrichment and detrimental reliance, and seek a mandatory injunction compelling Ferrara Fire to obtain the CCC certification.
Ferrara Fire denied the allegations and alleged plaintiffs' claims are premature because full payment has not been received for the fire trucks. Ferrara Fire also asserted a reconventional demand against plaintiffs and Steve Oubre, who formed Red Star. In the reconventional demand, Ferrara Fire alleged plaintiffs breached their obligation to obtain the CCC certification, causing Ferrara Fire to lose 10% of the purchase price of the trucks. Ferrara Fire alleged Oubre and Red Star breached their obligations to Ferrara Fire by erroneously translating documents to and from Chinese and caused damages exceeding $100,000.00. Ferrara Fire sought damages for breach of contractual duties and detrimental reliance on plaintiffs' representations.
Plaintiffs filed a motion for partial summary judgment seeking the specific amount of $650,402.00 and the dismissal of Ferrara Fire's reconventional demand. They argued Ferrara Fire's documents were prima facie proof of contracts between Ferrara Fire and plaintiffs, and that Ferrara Fire's records established the commissions and expenses owed plaintiffs. Regarding the reconventional demand, plaintiffs asserted Ferrara Fire has no evidence that plaintiffs were contractually bound to obtain the CCC certification or breached any obligation to obtain it, and Ferrara Fire has no competent evidence suggesting plaintiffs or Oubre breached any obligation causing damage to Ferrara Fire.
Ferrara Fire opposed the motion, asserting the existence of multiple genuine issues of material fact precluding summary judgment. Ferrara Fire disputed agreeing to pay commissions to Red Star, claimed any commissions must be reduced by Ferrara Fire's costs and expenses, and claimed to have suffered losses due to errors committed by the parties. Ferrara Fire also claimed plaintiffs sought payment for fees beyond the scope of their contract.
The trial court granted summary judgment in favor of plaintiffs, ordered Ferrara Fire to pay $622,170.00 ($650,402.00 less $28,232.00 attributed to training expenses), and dismissed the reconventional demand. Ferrara Fire filed a motion for new trial, arguing the summary judgment was contrary to the law and evidence. At the hearing on the motion for new trial, Ferrara Fire argued the claimed $650,000.00 included both expenses and commissions, and that expenses and commissions paid "up front" had to be subtracted. The trial court ordered the parties to submit charts based upon the summary judgment evidence showing what was owed and what was paid. The trial court then granted the motion for new trial, again rendered judgment in favor of plaintiffs, ordered Ferrara Fire to pay plaintiffs, jointly, $576,436.00, and again dismissed Ferrara Fire's reconventional demand. Pursuant to Louisiana Code of Civil Procedure article 1915B, the judgment was certified as final with an *611 express finding of no just reason to delay an appeal.
DISCUSSION
Appellate courts review summary judgments de novo using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La. 7/10/06), 935 So.2d 669, 686. That is, a motion for summary judgment shall be granted if, after an opportunity for discovery, the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3).
The burden of proof rests with the mover. La. Code Civ. Pro. art. 966D(1). If the mover will bear the burden of proof at trial on the issue before the court in the motion, the burden of showing there is no genuine issue of material fact remains with the mover. See La. Code Civ. Pro. art. 966D(1); Sims v. Maison Insurance Company, 16-1661 (La App. 1 Cir. 9/15/17), 231 So.3d 656, ---- (2017WL4081531). After the mover makes a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating a material factual issue remains. Jones v. Estate of Santiago, 03-1424 (La. 4/14/04), 870 So.2d 1002, 1006. However, if the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim, but must point out the absence of factual support for one or more elements essential to the claim. La. Code Civ. Pro. art. 966D(1). Thereafter, the burden shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966D(1). Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. Bryant v. Premium Food Concepts, Inc., 16-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 17-0873 (La. 9/29/17), 227 So.3d 288.
The parties agree there are no written contracts and that plaintiffs' claims are based on alleged oral contracts. In their petition, plaintiffs assert Ferrara Fire agreed to pay Red Star a 3% commission for sales facilitated by Red Star in China. Plaintiffs further assert Ferrara Fire agreed to pay Fepro commissions, fees, and expenses related to sales of Ferrara Fire trucks in China, including payment of the actual cost of obtaining the CCC certification, and payment on a time and material basis for delivery preparation, training, service, and warranty service for Ferrara Fire's products.
A party claiming the existence of a contract has the burden of proving the contract. See La. Civ. Code art. 1831. When a writing is not required by law, an oral contract that exceeds $500.00 must be proven by at least one witness and other corroborating circumstances. La. Civ. Code art. 1846 ; Suire v. Lafayette City-Parish Consol. Government , 04-1459 (La. 4/12/05), 907 So.2d 37, 58 ; Diversified Marine Services, Inc. v. Jewel Marine, Inc., 16-0617 (La. App. 1 Cir. 6/2/17), 222 So.3d 1008, 1014. To meet this burden of proof, a party to the contract may be his own witness and the "corroborating circumstances" may be general, without independently proving every detail of the agreement. See Suire, 907 So.2d at 58 ; Diversified Marine Services, Inc., 222 So.3d at 1014. However, corroboration must come from a source other than the plaintiff. Suire, 907 So.2d at 58.
*612 Through their motion for summary judgment, plaintiffs sought recovery of $650,402.00 under alleged oral contracts. Therefore, plaintiffs will bear the burden of proving at trial both the existence of the oral contracts and the amount owed. On the motion for summary judgment, plaintiffs were required to show there is no genuine issue of material fact that Ferrara Fire is contractually bound to pay the amount claimed.
In support of their motion, plaintiffs submitted affidavits of Oubre and Tsai Wai Man, Fepro's manager, Oubre attested that in negotiating the sale of the four fire trucks, "it was agreed that I would earn a sales commission and that [Fepro] would also earn a commission, in addition to substantial payments to facilitate the delivery of the trucks, provide necessary training, and to provide warranty work and services on the trucks." Similarly, Tsai attested that the negotiated bid prices for the fire trucks included amounts for services necessary to facilitate the sales, including commissions for Fepro and Red Star. Both Oubre and Tsai attested that the commissions were substantially similar to the amounts included on documents Ferrara Fire used to prepare the bids submitted to the buyers, referred to as "stripper sheets."
Plaintiffs submitted two stripper sheets in support of their motion and argue the stripper sheets, as well as Ferrara Fire's dealer cost analysis forms, corroborate the existence of the oral contracts and the amounts owed. The first stripper sheet, dated October 21, 2009, references quote number 10064-0006, and details a bid for building and equipping one fire truck for the price of $929,610.00. Deposition testimony established that the amounts shown on that sheet applied to three of the four trucks sold; therefore, for purposes of these claims, the amounts shown thereon should be multiplied by three. Included in a list of costs is $162,945.00 for "Fepro Expenses and Commissions." The second stripper sheet, also dated October 21, 2009, references quote number 10064-0007, and details a bid for building and equipping one fire truck for the price of $900,000.00. It lists costs of $133,335.00 for "Fepro Expenses and Commissions." Similarly, plaintiffs submitted two dealer costs analysis forms, one for $929,610.00 with a "Dealer Commission" of $163,910.00, and one for $900,000.00 with a "Dealer Commission" of $134,300.00.
Plaintiffs submitted deposition testimony of Jonathan Carroll, who worked for Ferrara Fire in sales until 2011 and prepared the stripper sheets at issue. As far as he knew, the stripper sheets were the only written documentation of Ferrara Fire's agreement regarding commissions and expenses payable to Oubre and Tsai. Carroll also testified the sales that Oubre consulted on were "through Fepro," and Ferrara Fire agreed to pay commissions and expenses only to Fepro. Carroll also explained that the stripper sheet amounts represented commissions and expenses, including any expenses for obtaining the CCC certification.
Plaintiffs also offered deposition testimony of Chris Ferrara, CEO of Ferrara Fire. Ferrara testified that Ferrara Fire entered an oral agreement with Red Star for consulting services, with Oubre being paid through Red Star for his time and expenses traveling to China, but denied any claims that Ferrara Fire owed Red Star or Oubre any sales commissions, stating "Fepro was going to pay [Mr. Oubre] at-or whatever deal he had with Fepro that, you know, that was his deal." Ferrara clarified that Oubre was a sales consultant, and Fepro was the distributor, authorized dealer, and agent in China. Thus, Ferrara explained, Fepro was subject to Ferrara Fire's standard dealer policies and procedures. According to Ferrara, those policies *613 and procedures specify that dealers are responsible for translating relevant documents, for any equipment shortages, and for their own mistakes. Ferrara testified that under the dealer policy, Ferrara Fire would "pay commission to the dealer within seven days after receipt of payment of the full invoiced price," but acknowledged the policy also provided for full payment of commissions when the partial payment of the sale price was due to Ferrara Fire's fault, such as a shortage of Ferrara Fire supplied equipment.
Regarding the CCC certification, Ferrara explained that Ferrara Fire sold trucks in China before the certification was required. When certification became a requirement, Oubre and Fepro agreed to handle it, with Ferrara Fire providing required supporting engineering data. Ferrara provided some of this information, but other information involving trade secrets of component manufacturers could not be provided. Ferrara said the provided documentation was "never enough," leading him to believe that the Chinese government was actually seeking documents in order to copy Ferrara Fire's products. He testified Ferrara Fire agreed to accept the 90% payment for the trucks and continue working through Oubre and Fepro for the CCC certification. Ferrara also testified one of his employees was told by an official with the CCC organization that the certification would "never happen." Based on this, Ferrara Fire was no longer "actively pursuing" certification, which could change if another dealer assumed the obligation and had some assurances of obtaining it. Ferrara testified "again, it was [Oubre] and Fepro's responsibility to get the CCC [certification] as they stated they could."
When asked about the Fepro commission shown on the stripper sheet, Ferrara testified some of the amount was paid and the amount shown would be reduced due to equipment shortages. Ferrara stated Oubre worked as a consultant, presented invoices, and was paid for his time and expenses. Ferrara reiterated that any agreement Fepro made with Oubre to pay Oubre commissions was between those parties. Ferrara admitted if Ferrara Fire was paid the remaining 10% of the truck prices, Fepro would be owed the stripper sheet amounts subject to deductions for advances and amounts for shorted equipment.
In their motion for summary judgment, plaintiffs, jointly, specifically seek $650,402.00 from Ferrara Fire. They have not proven their entitlement to a summary judgment awarding that amount. Any amount that may be due remains in dispute. Additionally, plaintiffs have not presented sufficient corroboration of an oral contract obligating Ferrara Fire to pay the stripper sheet amounts to Red Star. Arguably, the evidence supports an agreement between Ferrara Fire and Fepro that includes commissions. However, the evidence also establishes disputed issues of fact as to the nature and terms of such agreement, particularly the actual amount agreed upon, the conditions of payment, and any deductions. Without making credibility determinations and weighing the evidence presented, it is impossible to determine the amount Ferrara owes either plaintiff; however, courts are prohibited from determining credibility and weighing evidence when deciding motions for summary judgment. See Property In., Ass'n of Louisiana v. Theriot , 09-1152 (La. 3/16/10), 31 So.3d 1012, 1014. Consequently, the summary judgment awarding $576,436.00 to plaintiffs must be reversed.
Similarly, summary judgment dismissing Ferrara Fire's reconventional demand is not appropriate because of genuine issues of material fact as to the parties' agreement regarding the CCC certification, translation of documents, and whether errors were made causing damages to *614 Ferrara Fire. Resolution of these issues will necessarily require credibility determinations and weighing evidence, which, again, are precluded in deciding a motion for summary judgment. See Property Ins. Ass'n of Louisiana, 31 So.3d at 1014. Consequently, this portion of the summary judgment must also be reversed.
Considering this decision, we pretermit discussion of the claim that summary judgment is premature because Ferrara Fire has not yet deposed Tsai.[1]
CONCLUSION
The April 5, 2017 summary judgment ordering Ferrara Fire to pay plaintiffs $576,436.00 and dismissing Ferrara Fire's reconventional demand is reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed to Red Star Consultants, LLC, and Fepro Fire Protection Co., Ltd.
REVERSED.

Through this appeal Ferrara Fire also seeks review of the trial court's ruling denying its exception of venue. However, such review may only be raised by application for supervisory writ. Lejeune v. Gerace, 15-1492, 2016 WL 2840605, p. 1 (La. App. 1 Cir. 4/27/16) ; see also Land v. Vidrine, 10-1342 (La. 3/15/11), 62 So.3d 36, 41. Accordingly, the issue of venue is not reviewable herein.