STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0876

JAMES WAGNER

VERSUS

DA EXTERMINATING COMPANY OF ST. TAMMANY, INC.
AND LIPCA, INC.

Judgment Rendered: **APR 1 6 2021**

* * * * *

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
Trial Court No. 2018-14510

The Honorable William H. Burris, Judge Presiding

* * * * *

Jeffrey M. Siemssen
Albert J. Nicaud
Bret D. Guepet, Jr.
Metairie, Louisiana

Attorneys for Plaintiff-Appellant,
James Wagner

Gretchen F. Richards
Edward W. Trapolin
New Orleans, Louisiana

Attorneys for Defendants-Appellees,
DA Exterminating Company of St.
Tammany, Inc. and Gemini Ins. Co.

* * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**WOLFE, J.**

In this lawsuit, plaintiff seeks to recover payment for damages to his house caused by termites pursuant to the terms of a pest control contract. The trial court rendered summary judgment in favor of the pest control company and dismissed plaintiff's claims. Plaintiff appeals. We affirm in part, reverse in part, and remand.

## BACKGROUND

In 2011, James Wagner became the new owner of a house located in Covington, Louisiana. In 2007, the previous owner entered into a post-construction standard pest control contract and limited damage warranty addendum with DA Exterminating Company of St. Tammany, Inc. (DA). The damage warranty was subject to the annual renewal of the pest control contract; however, "DA reserve[d] the right not to renew the ... [w]arranty." The original contract and warranty were transferred to Mr. Wagner on August 22, 2012. Mr. Wagner renewed the contract and warranty in 2012 and 2013 by payment of the annual renewal fee as specified in the contract. Mr. Wagner did not renew the original contract or warranty in 2014. Instead, DA offered Mr. Wagner an estimate for two new contract options for re-treating the residence: (1) Initial liquid treatment, including Sentricon baiting system, at a price of $1,825.00 and an annual renewal fee of $275.00; or (2) Initial liquid treatment price of $775.00 and an annual renewal fee of $155.00. Neither option included the damage warranty addendum. Mr. Wagner chose the second option and entered into a new contract with DA on August 11, 2014. Mr. Wagner later acknowledged that a damage warranty was not offered and he did not sign any addendum to the contract for a damage warranty.

The 2014 contract signed by Mr. Wagner included the following pertinent language:

1. PERFORMING THE WORK
[DA] agrees to treat the building(s) in complete compliance with applicable laws . . . and to inspect the property annually prior to the

2

expiration of this agreement. . . . **Under no circumstances or conditions shall [DA] be responsible for damage caused by [DA] at the time the work is performed except those damages resulting from gross negligence on the part of [DA].**

\* \* \*

3. INFESTATION

**Should an active infestation** (meaning the presence of live insects) of the wood destroying insects covered by this agreement **occur** in any portion of the building(s) covered by this agreement, **[DA] agrees to treat such infested portions within thirty (30) days of discovery of such infestation** at no additional charge to the Customer, except as otherwise noted within this agreement.

\* \* \*

11. NONPAYMENT

The Customer agrees that **upon default of any payment due by the Customer, [DA] is relieved from further obligation** under this agreement. . . .

12. DAMAGE

THE CUSTOMER UNDERSTANDS THAT DUE TO VARIOUS CONDITIONS PRESENT IN CONSTRUCTION EXISTING AT THE TIME THIS AGREEMENT IS MADE, AND THE POSSIBILITIES OF INFESTATION AND DAMAGE WHICH MAY NOT BE VISIBLE TO [DA], **[DA] CANNOT BE HELD LIABLE FOR ANY PAST, PRESENT OR FUTURE DAMAGE** TO THE STRUCTURE(S) OR ITS CONTENTS COVERED BY THIS AGREEMENT, **CAUSED BY WOOD-DESTROYING INSECTS**.

\* \* \*

14. ENTIRE AGREEMENT

Attachment(s), if any together with **this agreement** signed by [DA] and the Customer at the time the agreement is entered into, **constitute the entire agreement between the parties** and **no other representations or statements, whether oral or written, will be binding upon the parties**.

(Emphasis added.)

Mr. Wagner signed and dated the 2014 contract on August 11, 2014, declaring that, "By signing this agreement, I the customer, certify that I have read the provisions above and on the reverse side and agree [sic] all terms and conditions outlined therein." On that same date, DA treated Mr. Wagner's property in accordance with the chosen second contract option. Mr. Wagner signed waivers on that date, requesting that DA not treat all shower and bath trap areas and not do any drilling on slate. Each of the waivers of "MINIMUM SPECIFICATIONS FOR TERMITE CONTROL WORK" that were signed by Mr. Wagner state, "I agree to

3

the Waiver Request and fully understand that [DA] is not responsible for any damages resulting from termites entering through the waived area(s)."

Mr. Wagner renewed the contract with DA in 2015 and in 2016, and he modified the waivers of minimum specifications for termite control work, allowing DA to drill on the slate and access to all shower and bath trap areas when the residence was treated in those years. However, there were two areas that were not successfully treated in 2015: (1) the shower and bath traps in the master and guest bathrooms as they were inaccessible; and (2) some areas on the rear steps and rear patio that could not be drilled and treated. Mr. Wagner's revised waiver reflected that he understood DA was not responsible for the areas that were not treated.

In June 2016, Mr. Wagner contacted DA about a discovery of evidence of termites in his breakfast nook/sunroom area. He reported that he saw sawdust and the area was rotten. DA inspected Mr. Wagner's residence in June and in August 2016. DA found "breakouts on the window," but did not observe any live insects at that time. A supplemental inspection was scheduled in August 2016 so that the DA technician could bring a ladder in order to observe a rotten area on the roof near the chimney. The technician for DA noted that "[s]ome bait was eaten but no live insects observed." Mr. Wagner indicated at that time that he would be proceeding with repairs and would report if anything was discovered. DA agreed to follow up within 60 days if they did not hear back from Mr. Wagner. In May 2017, no signs of termites were observed, but DA noticed a "possible beetle infestation . . . inside by [the] sunroom window."

In June 2017, DA provided a new treatment estimate, recommending an upgrade to an additional form of treatment (Sentricon) for control of termites. DA inspected the residence at no cost to Mr. Wagner in September 2017; however, Mr. Wagner opted not to pay the renewal fee for the contract in 2017. Mr. Wagner inquired about adding a damage warranty, but that was never offered. Nevertheless,

4

DA was obligated by the 2014 contract, which was renewed in 2015 and 2016, to treat infestations within thirty days of discovery. DA responded to a call from Mr. Wagner and inspected Mr. Wagner's residence in February 2018 for "possible termite activity." Active tunnels were discovered on the outside wall of the living room. DA noted that the house was being remodeled at the time, and they placed bait traps near the tunnels. DA also found wood rot on the left side of the front door. As a result, weekly follow ups were scheduled to inspect the remodel progress for water damage or possible termites.

After the discovery of possible termite activity in February 2018, Mr. Wagner requested an inspection by the Louisiana Department of Agriculture and Forestry (State), and that inspection revealed a live infestation at the "[s]pare room at the rear of the home." The State's notice of inspection noted that no violation was suspected, but treatment was required. In accordance with the 2014 contract, DA inspected and treated Mr. Wagner's residence once in March and twice in April 2018, at no cost to Mr. Wagner. A second inspection by the State in April 2018 revealed no active infestation, and the inspector noted that "Mr. Wagner chose not to renew with [DA], and he would not sign anything to have his back porch drilled." The inspector further noted that the house "appears to be treated according to state minimum specifications." A final inspection was performed by DA in May 2018, where no live termites were observed at Mr. Wagner's home. DA removed all of the bait stations from Mr. Wagner's residence at that time and Mr. Wagner's account was closed in June 2018 since the 2017 contract had not been renewed.

Mr. Wagner filed suit against DA and its insurer[1] on September 17, 2018, asserting damage claims for breach of contract and gross negligence. He later

---

[1] Initially, Mr. Wagner named LIPCA, Inc. as DA's insurer. Mr. Wagner later substituted Gemini Insurance Company in place of LIPCA as the proper insurer for DA, and LIPCA was dismissed.

amended his petition to add a claim for unfair trade practices and asserted that unilateral error had vitiated his consent to the contract. DA and its insurer filed several different motions for summary judgment regarding all of Mr. Wagner's claims and, alternatively, an exception raising the objection of no cause of action on the unfair trade practices claim. DA relied on the language of the 2014 contract, along with its treatment and re-treatment of Mr. Wagner's home, to show that DA honored its contractual obligations. DA further argued that Mr. Wagner would not be able to produce any evidence to support his claims for breach of contract, breach of warranty, or gross negligence.

In support of each of its motions for summary judgment, DA produced identical affidavits by its vice president, Edward Reynolds, stating that Mr. Wagner was never offered a damage warranty addendum with the 2014 contract. Mr. Reynolds further explained in his deposition testimony, also offered in support of DA's motions, that DA no longer offered damage warranty addendums on properties where any of the minimum treatment was waived. Mr. Reynolds confirmed that Mr. Wagner had signed waivers for treatment on certain bath/shower traps and drilling on slate in the rear area of his house. Mr. Wagner opposed all of DA's motions and exceptions, relying on his personal affidavit, his deposition testimony, and an expert opinion and report showing that Mr. Wagner reasonably expected the original 2007 damage warranty to continue through the 2014 contract, and that DA did not properly treat Mr. Wagner's home. The trial court held a hearing on all of the motions and exceptions on March 5, 2020, considering all evidence in support of and in opposition to the motions for summary judgment.

The trial court immediately ruled after the parties argued and submitted their evidence, finding that Mr. Wagner had no proof of unfair trade practices, breach of contract, unilateral error, or gross negligence. The trial court focused on the fact that Mr. Wagner signed the 2014 contract that did not include a warranty without reading

6

it thoroughly. Thus, the trial court granted all motions for summary judgment in favor of DA and its insurer, dismissing all of Mr. Wagner's claims. A final judgment was signed in accordance with that oral ruling on June 12, 2020.[2] Mr. Wagner appealed.

## DISCUSSION

Appellate courts review summary judgments *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. **Red Star Consultants, LLC v. Ferrara Fire Apparatus, Inc.**, 2017-0847 (La. App. 1st Cir. 2/8/18), 242 So.3d 608, 611. A motion for summary judgment shall be granted if, after an opportunity for discovery, the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

If the mover will bear the burden of proof at trial on the issue before the court in the motion for summary judgment, the burden of showing there is no genuine issue of material fact remains with the mover. After the mover makes a *prima facie* showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating a material factual issue remains. La. Code Civ. P. art. 966(D)(1); **Red Star Consultants, LLC**, 242 So.3d at 611. Factual inferences reasonably drawn from the evidence must be construed in favor of the

---

[2] Mr. Wagner complains that the trial court erred in not issuing written findings of fact and reasons for judgment after a request was made pursuant to La. Code Civ. P. art. 1917. When the trial court fails to comply with a timely request for written findings and reasons, the proper remedy for the aggrieved party is to apply for supervisory writs or move for a remand for the purpose of requiring or affording the trial court an opportunity to comply with the request. **Yuma Petroleum Co. v. Thompson**, 96-1840 (La. App. 1st Cir. 2/20/98), 709 So.2d 824, 827, affirmed in part and reversed in part on other grounds, 98-1399 (La. 3/2/99), 731 So.2d 190. In this case, neither remedy was employed; therefore, we shall review the matter as in any other case where the record contains no written reasons for judgment. Moreover, we have reviewed the trial court's oral reasons for judgment, which were transcribed and included in the record. We find those oral reasons adequately express the facts and law on which the trial court relied in its ruling. The oral reasons provide Mr. Wagner with a sufficient basis from which he could, and did, appeal. See **Smoloski v. Smoloski**, 2001-0485 (La. App. 3d Cir. 10/3/01), 799 So.2d 599, 601.

party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. **Willis v. Medders**, 2000-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (*per curiam*).

A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (*per curiam*). A genuine issue is one as to which reasonable persons could disagree. If reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Id**. at 765-66. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. **Action Oilfield Services, Inc. v. Energy Management Company**, 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So.3d 538, 542.

It is undisputed that the terms of the contract that Mr. Wagner signed on August 11, 2014, provided that DA shall not be held "responsible for damage caused by [DA] . . . except those damages resulting from **gross negligence** on the part of [DA]." (Emphasis added.) Whether Mr. Wagner *thought* that an additional damage warranty was a part of his new contract he signed in 2014 is irrelevant. Mr. Wagner knowingly signed the 2014 contract. DA introduced excerpts from Mr. Wagner's deposition testimony that show he is an educated man with a finance degree, currently working as the chief financial officer for a family business. Mr. Wagner offered no opposing evidence that he did not understand warranties or language in contracts. In his affidavit, Mr. Wagner merely stated that it was his "personal belief" that his home was covered by DA's standard contract and damage warranty.

There is no damage warranty contained within the document that Mr. Wagner signed, which a simple reading of the contract would have revealed. If Mr. Wagner was confused about the damage warranty issue, he could have requested that it be

8

explained or added. The presumption is that parties are aware of the contents of writings to which they have affixed their signatures. The burden of proof is upon them to establish with reasonable certainty that they have been deceived. If a party can read, it behooves him to examine an instrument before signing it. **Peironnet v. Matador Resources Co.**, 2012-2292 (La. 6/28/13), 144 So.3d 791, 814, <u>citing</u> **Tweedel v. Brasseaux**, 433 So.2d 133, 137 (La. 1983). As this court has long held, signatures to an obligation are not mere ornaments. **Durand v. Board of Trustee's of Sheriffs' Pension & Relief Fund**, 96-2409 (La. App. 1st Cir. 11/7/97), 704 So.2d 12, 17, <u>writ denied</u>, 97-3005 (La. 2/6/98), 709 So.2d 745. A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it. **Williams v. Interstate Dodge Inc.**, 45,159 (La. App. 2d Cir. 4/14/10), 34 So.3d 1151, 1156.

A contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Further, a contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. Contracts have the effect of law for the parties. La. Civ. Code art. 1983. Consent to a contract may be vitiated by error, fraud, or duress. La. Civ. Code art. 1948. Error that vitiates consent can manifest in two ways: mutually, *i.e.*, both parties are mistaken, or unilaterally, *i.e.*, only one party is mistaken. **Peironnet**, 144 So.3d at 807. However, in both situations, the error for which relief may be granted must affect the cause of the obligation, and the other party must know or should have known that it was the reason the other party consented to bind himself. **Id**. Moreover, unilateral error does not vitiate consent if the reason for the error is the complaining party's inexcusable neglect in discovery of the error. **Durand**, 704 So.2d at 15.

When Mr. Wagner signed the 2014 contract, it was after he had been given an estimate that included two options. Neither option included a damage warranty. Mr. Wagner chose the less expensive option and signed a waiver of some of the state's minimum specifications for termite control. There is nothing in the record that suggests that Mr. Wagner requested a damage warranty or even discussed a damage warranty with DA when he signed the 2014 contract. Mr. Wagner offered no evidence that he was taken advantage of, misled, or deceived. These facts are undisputed. Thus, we conclude, as did the trial court, that Mr. Wagner's consent to the 2014 contract was not vitiated by error. He may not benefit from his unilateral error under the facts of this case.

In 2015 and 2016, Mr. Wagner renewed the 2014 contract but revised his waiver concerning drilling on his slate flooring at the rear of his house and accessing bath and shower traps for treatment. DA treated Mr. Wagner's house as obligated by the terms of the renewed 2014 contract, and when evidence of termites were found, DA timely treated the premises at no extra cost to Mr. Wagner as required by the 2014 contract. These facts are undisputed. Therefore, we conclude, as did the trial court, that the 2007 contract was no longer applicable and the 2014 contract was controlling. Mr. Wagner failed to provide any evidence of a breach of the 2014 contract.

Next, we address Mr. Wagner's claim that DA engaged in unfair trade practices. Louisiana's Unfair Trade Practice Act (LUTPA) prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). In order to recover under LUTPA, a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct" on the part of the defendant. **Cheramie Services, Inc. v. Shell Deepwater Production, Inc.**, 2009-1633 (La. 4/23/10), 35 So.3d 1053, 1059 (quoting **Dufau v. Creole Engineering, Inc.**, 465 So.2d 752, 758 (La. App. 5th Cir.), writ denied, 468 So.2d 1207 (La.

10

1985)). The range of prohibited practices under LUTPA is extremely narrow. **Cheramie**, 35 So.3d at 1060. Courts have repeatedly held that under LUTPA, the plaintiff must show that the alleged conduct "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." **Id.** at 1059 (quoting **Moore v. Goodyear Tire & Rubber Co.**, 364 So.2d 630, 633 (La. App. 2d Cir. 1978)). LUTPA prohibits only fraud, misrepresentation, and similar deceptive or unethical conduct. **Cheramie**, 35 So.3d at 1060. After reviewing the record, we conclude that there is no evidence supporting Mr. Wagner's contention that DA engaged in any of the type of conduct necessary to support a LUTPA claim. The trial court correctly ruled that DA was entitled to judgment as a matter of law on the LUTPA claim.

Finally, we consider the trial court's ruling regarding Mr. Wagner's claim that DA was *grossly negligent* in treating, failing to prevent the infestation of live termites at his home, and following up with treatment after the infestation was discovered. Gross negligence has a well-defined legal meaning that is distinctly different from the definition of ordinary negligence. **Pierre v. Zulu Social Aid & Pleasure Club, Inc.**, 2004-0752 (La. App. 4th Cir. 9/29/04), 885 So.2d 1261, 1264. In **Ambrose v. New Orleans Police Department Ambulance Service**, 93-3099 (La. 7/5/94), 639 So.2d 216, 219, the Louisiana Supreme Court stated that "[g]ross negligence has been defined as the 'want of even slight care and diligence' and the 'want of that diligence which even careless men are accustomed to exercise'", (quoting **State v. Vinzant**, 200 La. 301, 7 So.2d 917 (La. 1942)). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." **Tudor Chateau Creole Apartments Partnership v. D.A. Exterminating Co., Inc.**, 96-0951 (La. App. 1st Cir. 2/14/97), 691 So.2d 1259, 1262 (quoting **Ambrose**, 639 So.2d at 220). In summary, gross negligence is the

entire absence of care that amounts to complete neglect of the rights of others. **Ambrose**, 639 So.2d at 219-220.

Under the 2014 contract at issue, DA is only responsible for damages resulting from DA's gross negligence. Mr. Wagner contends that DA was grossly negligent in the termite treatment provided at his residence. Mr. Wagner relies on his expert's affidavit and report, concluding that DA had misapplied treatments at Mr. Wagner's residence in violation of termiticide labels and multiple industry regulations. The expert also noted that there was no sign of an infestation in the waived bath trap or slate areas of Mr. Wagner's home; thus, all of the areas of infestation were in areas that had been treated by DA. Additionally, the expert stated that DA's inspections and installation of bait traps after the infestation was discovered were not enough. He opined that per industry regulations and labels on treatment products, the inspections should have totaled eight, but there were only four during the two-year period. On the other side, DA's documents reveal that DA responded to Mr. Wagner's infestation problems within thirty days, then sixty days, and sometimes weekly in 2018. However, the inspections and follow-ups are spotty in 2016 and 2017. Even though DA noticed that "[s]ome bait was eaten" in August 2016 and advised Mr. Wagner that they would follow up within sixty days, the next inspection was not until May 2017. There is no documentation in the records provided by DA indicating that inspections were conducted in 2017 other than ninety days after the annual treatment. We find that the parties' competing contentions present a material issue of fact as to whether DA's response to Mr. Wagner's termite infestation at his home was grossly negligent.

Because we conclude that a genuine issue of material fact exists as to how DA handled the follow-up inspections and treatment at Mr. Wagner's home after evidence of termite activity was discovered, and whether that response was grossly negligent, we find that the trial court erred in granting summary judgment in favor

of DA on the issue of gross negligence. A trier of fact must resolve the remaining genuine issue of material fact that exists in this case.

## CONCLUSION

The June 12, 2020 judgment of the trial court in favor of DA is affirmed in all parts except for the grant of summary judgment concerning the gross negligence claim, which is reversed. This matter is remanded for a trial on the issue of gross negligence. All costs of this appeal are assessed to DA Exterminating Company of St. Tammany, Inc.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**