STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CW 0563

CHARLYNE R. ALFRED

VERSUS

JOSEPH J. TRAPP, US AGENCIES CASUALTY INSURANCE
COMPANY AND STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

**Judgment Rendered:** **FEB** 1 0 2022

\* \* \* \* \* \*

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Suit Number 22008-12051

Honorable Vincent J. Lobello, Presiding

\* \* \* \* \* \*

Wayne William Yuspeh
Metairie, Louisiana

Counsel for Plaintiff-Appellant
Charlyne R. Alfred

Ashley Edwards Bass
Hammond, Louisiana

Counsel for Defendant-Appellee
State Farm Mutual Automobile
Insurance Company

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Chutz, J. Agrees in part and dissents in part and assigns reasons.

**GUIDRY, J.**

Plaintiff-appellant, Charlyne R. Alfred, appeals a district court judgment denying her motion for summary judgment in which she challenged the validity of an uninsured motorist coverage form purportedly selecting lower limits than her liability coverage. For the following reasons, we convert the appeal to an application for supervisory writ and deny the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2004, plaintiff contacted her insurance agent to request an increase in the coverage provided by her automobile insurance policy with State Farm Mutual Automobile Insurance Company (State Farm). At the time, the policy provided limits of 100,000/300,000 both for bodily injury liability and uninsured/underinsured motorist (UM) coverage. According to plaintiff, she informed her insurance agent that she wanted to increase the limits of both her bodily injury liability and UM coverage to $500,000 each. On September 27, 2004, plaintiff signed and initialed a UM coverage form at the agent's office. Plaintiff claims the form was incomplete when she signed it. Specifically, she denied that her printed name, the limits of UM coverage, or the policy number were written on the coverage form when she signed it. Further, plaintiff denied any knowledge of who subsequently completed the coverage form with this information or when they did so.

In any event, on April 17, 2007, plaintiff was injured when her vehicle was rear-ended by a vehicle driven by Joseph Trapp. Plaintiff filed a suit for damages against Trapp and his liability insurer. State Farm was also named as a defendant based on plaintiff's contention that Trapp was underinsured. Plaintiff subsequently settled her claims against Trapp and his insurer. Although plaintiff's insurance policy provided for 500,000/500,000 in liability coverage, State Farm asserted the policy's UM coverage limits were 100,000/300,000, in accordance with the UM

2

coverage form plaintiff signed in September 2004. Accordingly, State Farm tendered $100,000 to plaintiff.

In 2020, the parties filed cross-motions for summary judgment concerning the validity of the UM coverage form and the applicable limits of the policy's UM coverage.[1] Following a hearing, the district court denied both motions for summary judgment, concluding genuine issues of material fact existed on both sides. The district court signed a judgment on October 7, 2020, which included a certification that the judgment was final and appealable.

Plaintiff thereafter filed an application for supervisory writ challenging the denial of her motion for summary judgment. A different panel of this court granted the writ application for the limited purpose of remanding this matter to the district court with instructions to grant plaintiff an appeal from the October 7, 2020 judgment since the judgment contained a certification pursuant to La. C.C.P. art. 1915(B).[2] Alfred v. Trapp, 20-1055 (La. App. 1st Cir. 1/13/21) (unpublished). In accordance therewith, the district court signed an order granting plaintiff an appeal. On appeal, plaintiff argues in two assignments of error that the district court erred in failing to find the limits of her UM coverage to be the same as the $500,000 liability limits due to the invalidity of the UM coverage form.

## APPEALABILITY OF JUDGMENT

An appeal panel has the authority, and indeed the duty, to review, overrule, modify, and/or amend a writ panel's decision on an issue when, after reconsidering

---

[1] The parties had previously filed cross-motions for summary judgment, which the district court denied on January 2, 2014. Plaintiff appealed that judgment, and this court dismissed the appeal on the grounds it was taken from an interlocutory judgment that did not determine the merits in whole or in part. Alfred v. Trapp, 14-0574 (La. App. 1st Cir. 9/8/14) (unpublished).

[2] Louisiana Code of Civil Procedure article 1915(B)(1) provides:

When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

3

the issue to the extent necessary to determine whether the writ panel's decision was correct, the appeal panel finds the writ panel's decision was in error. Atchafalaya Basinkeeper v. Bayou Bridge Pipeline, LLC, 18-0417, pp. 3-4 (La. App. 1st Cir. 2/22/19), 272 So. 3d 567, 570; Joseph v. Ratcliff, 10-1342, p. 4 (La. App. 1st Cir. 3/25/11), 63 So. 3d 220, 223. The prior ruling should be overruled or modified, however, only when it is manifestly erroneous or application of the law of the case doctrine would result in an obvious injustice. Atchafalaya Basinkeeper, 18-0417 at p. 4, 272 So. 3d at 570; Joseph, 10-1342 at p. 4, 63 So. 3d at 223.

This court's appellate jurisdiction extends only to final judgments and interlocutory judgments expressly provided by law. La. C.C.P. art. 2083. In this case, because the judgment denying plaintiff's motion for summary judgment did not determine the merits or terminate the suit, it is interlocutory in nature, rather than final. See La. C.C.P. art. 1841; G.D. v. Moore, 20-1227, p. 1 (La. App. 1st Cir. 4/16/21), 323 So. 3d 394. Although the judgment includes a certification that the judgment is final and appealable, the certification is in contravention of the legislature's express provision that an appeal does not lie from the denial of a motion for summary judgment. See La. C.C.P. art. 968. Because no right to appeal the denial of a motion for summary judgment exists, such a judgment cannot properly be certified as appealable under Article 1915(B). See Acadian Properties Northshore, L.L.C. v. Fitzmorris, 19-1549, p. 4 (La. App. 1st Cir. 11/12/20), 316 So. 3d 45, 48 n.4; Beverly Construction, L.L.C. v. Wadsworth Estates, L.L.C., 19-0909, p. 3 (La. App. 1st Cir. 2/21/20), 297 So. 3d 1, 3.

Accordingly, the writ panel's previous ruling instructing the district court to grant plaintiff an appeal was in error, since the denial of plaintiff's motion for summary judgment is not appealable under Article 968. Moreover, the discretionary law of the case doctrine does not bar us from reconsidering the writ panel's prior ruling, especially when the prior ruling is clearly erroneous and would result in an

4

inappropriate review under our appellate jurisdiction of a non-appealable judgment. See Atchafalaya Basinkeeper, 18-0417 at p. 4, 272 So. 3d at 570; Joseph, 10-1342 at p. 4, 63 So. 3d at 223-24.

The proper procedural vehicle to challenge an interlocutory judgment is an application for supervisory writs. Bernard Lumber Company, Inc. v. Louisiana Insurance Guaranty Association, 563 So. 2d 261, 263 (La. App. 1st Cir.), writ denied, 566 So.2d 981 (La. 1990). Although plaintiff initially sought review by filing a writ application within the thirty-day delay provided for seeking supervisory writs, the prior writ panel erroneously ordered that an appeal be granted. See La. Uniform Rules-Courts of Appeal, Rule 4-3. Given the circumstances, we exercise our discretion to convert this appeal to an application for supervisory writs, and consider the merits of this appeal under our supervisory jurisdiction. See Matter of Abram, 21-0291 (La. App. 1st Cir. 10/18/21), 2021 WL 4844743, at *2 (unpublished).

## SUMMARY JUDGMENT LAW

A motion for summary judgment shall be granted only if the motion, memorandum, and supporting documents admitted for purposes of the motion for summary judgment show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. Alvarado v. Lodge at the Bluffs, Inc., 16-0624, p. 5 (La. App. 1st Cir. 3/29/17), 217 So. 429, 432, writ denied, 17-0697 (La. 6/16/17), 219 So. 3d 340.

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the matter before the court on the motion, the mover's burden does not require that all essential

5

elements of the adverse party's claim, action, or defense be negated. Instead, after establishing the material facts by its supporting affidavits, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. See Jenkins v. Hernandez, 19-0874, p. 4 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 370, writ denied, 20-00835 (La. 10/20/20), 303 So. 3d 315. Thereafter, if the adverse party fails to produce factual evidence sufficient to establish the existence of a genuine issue of material fact, the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(D)(1); Alvarado, 16-0624 at p. 5, 217 So.3d at 432.

**DISCUSSION**

Plaintiff argues she is entitled to summary judgment holding the limits of her UM coverage are the same as her policy's $500,000 liability limits because State Farm cannot sustain its burden of proving she signed a valid UM coverage form selecting lower UM coverage limits in accordance with the requirements of Duncan v. U.S.A.A. Insurance Company, 06-363 (La. 11/29/06), 950 So. 2d 544. She contends the coverage form she signed is invalid because portions of the form were blank when she signed it, violating the requirement that the form be completed *before* it is signed by the insured. She maintains an unknown person printed her name on the form and wrote in the amount of UM coverage and the policy number *after* she signed the incomplete coverage form.

In Louisiana, UM coverage is determined not only by contractual provisions but also by applicable statute, currently La. R.S. 22:1295, which embodies a strong public policy. The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor not covered by adequate liability insurance. Thus, the UM statute is liberally construed, while the statutory exceptions to coverage must be interpreted strictly. Any exclusion from coverage must be clear and unmistakable. Moreover, the insurer bears the burden of proving

6

an insured rejected in writing UM coverage, selected lower limits, or selected economic-only coverage. Gray v. American National. Property & Casualty. Company, 07-1670, pp. 8-9 (La. 2/26/08), 977 So. 2d 839, 845; Duncan, 06-363 at p. 5, 950 So. 2d at 547.

Under La. R.S. 22:1295, UM coverage will be read into an automobile insurance policy unless the insured either validly rejects coverage, selects lower limits, or selects economic-only coverage. See La. R.S. 22:1295(1)(a)(i); Gray, 07-1670 at p. 8, 977 So.2d at 845; Duncan, 06-363 at p. 4, 950 So.2d at 547. An insured may reject UM coverage or select lower limits "only on a form prescribed by the commissioner of insurance." La. R.S. 22:1295(1)(a)(ii). If a coverage form is properly completed and signed, it "creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." La. R.S. 22:1295(1)(a)(ii).

In Duncan, the Louisiana Supreme Court explained that the following six tasks are required for completion of a valid UM coverage form: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number;[3] and (6) filling in the date. Duncan, 06-363 at pp. 11-12, 950 So. 2d at 551. More is required, however, than the mere rote completion of the tasks enumerated

---

[3] Following the Duncan decision, the Supreme Court acknowledged the policy number is not essential to a valid UM coverage form when the evidence establishes no policy number was available at the time the UM coverage form was executed. Carter v. State Farm Mutual. Automobile Insurance Company, 07-1294 (La. 10/5/07), 964 So. 2d 375, 376. In the present case, no evidence was presented by the parties that a policy number was unavailable when plaintiff signed the UM coverage form on September 27, 2004. Subsequent to plaintiff's 2007 automobile accident, however, the Commissioner of Insurance published Louisiana Department of Insurance Bulletin No. 08-02, which provides that the policy information does not have to be included in order for the UM coverage form to be properly completed. See Chicas v. Doe, 15-0147 (La. 5/1/15), 166 So. 3d 238 (per curiam); Bagala v. Tregre, 20-0600, p. 7 (La. App. 1st Cir. 12/30/20), 319 So.3d 308, 313.

in Duncan by someone at some time. Gray, 07-1670 at p. 14, 977 So.2d at 849. For the coverage form to be valid, the required tasks must be completed *before* the UM coverage form is signed by the insured, so that the insured's signature signifies an acceptance of and agreement with all of the information contained on the form. An insurer who is unable to prove a UM coverage form was completed before it was signed by the insured simply cannot meet its burden of proving by clear and unmistakable evidence that the UM coverage form is valid. Gray, 07-1670 at p. 14, 977 So.2d at 849.

In support of her motion for summary judgment, plaintiff submitted a copy of the UM coverage form, which she signed and initialed on September 27, 2004.[4] According to the UM coverage form, plaintiff initialed the option to select *lower* UM limits in the amount of 100,000/300,000.[5] In addition to the UM coverage form, Plaintiff also submitted her own affidavit to establish the coverage form was improperly completed and, therefore, was invalid. Specifically, in her affidavit, plaintiff stated:

> [S]he contacted the office of Rod Tregle, who was her State Farm insurance agent, and requested that her policy limits be increased to $500,000. She understood and requested that the $500,000 increased limits would be for liability coverage and also for UMBI coverage.
>
> ... She went into the office on or about September 27 2004 and met with one of the ladies that worked there.
>
> She was provided with a form and asked to sign and initial where it was marked.
>
> This form was blank and was not filled in at all and it had some sticky tabs/arrows pointing to areas on the form where the lady at [her insurance agent's] office told her to sign and initial, which is what she did. It was her understanding that signing this form was necessary to

---

[4] Although she admitted signing a similar form, when plaintiff was presented with the coverage form at issue during her deposition, she indicated she was "not sure" whether it was her signature on the form since some of the letters were a "little outside the way" she wrote. State Farm subsequently hired a handwriting expert, who opined the signature of the coverage form was that of plaintiff. Plaintiff does not dispute this conclusion.

[5] The UM Coverage form contains two options: either selection of UMBI with limits lower than liability coverage limits or UMBI with the same limits as liability coverage. Plaintiff does not dispute that she initialed next to the option selecting UMBI with limits lower than liability coverage.

8

obtain the increase in her policy to the $500,000 limits for both liability and UMBI coverages. ...

There were no dollar amounts of insurance written on the form, nor was her name written or printed on the form, nor was a policy number written on the form she signed. Those areas were blank at the time she signed the form.

The form ... as it appears now, was not, at the time of her signing, filled in with dollar amounts, a policy number nor her printed or written name. She does not know who filled those in or when, but is sure they were not filled in at the time of her signing the form.

Thus, plaintiff's affidavit does not dispute that she signed and initialed the form; rather, she contends that key portions of the form were not completed at the time she signed/initialed the form. As previously noted, a completed and signed UM coverage form is presumed valid. Plaintiff's affidavit, while setting forth facts indicating that the UM coverage form was not properly completed at the time she signed the form, does not affirmatively establish the invalidity of the UM coverage form, but rather, creates a genuine issue of material fact as to whether the UM coverage form was properly completed and therefore, valid. Furthermore, consideration of plaintiff's affidavit testimony necessarily involves an evaluation of her credibility, which is not an appropriate consideration on a motion for summary judgment.[6] See Red Star Consultants, LLC v. Ferrara Fire Apparatus, Inc., 17-0847, p. 8 (La. App. 1st Cir. 2/8/18), 242 So.3d 608, 613.

From our *de novo* review, we find that plaintiff failed to establish that there was no genuine issue of material fact and that she is entitled to summary judgment

---

[6] Plaintiff's affidavit testimony contradicted her undisputed selection on the UM coverage form. Plaintiff stated in her affidavit that "[s]he did not knowingly agree to any lower limits for UM coverage on the [vehicle involved in the accident], and expected that liability limits of $500,000 and the UMBI coverages were both for $500,000." However, in initialing the UM coverage form, plaintiff initialed next to the section stating "I select **UMBI Coverage** which will compensate me for my economic and non-economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:" rather than initialing next to the section stating "I select **UMBI Coverage** which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage." As such, the selection on the form substantively contradicts her affidavit testimony stating that she expected her UMBI limits to be the same as her liability limits and calls into question plaintiff's credibility.

in her favor. Therefore, we find no error in the district court's judgment denying her motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we convert this appeal to an application for supervisory writ and deny the writ. All costs of this appeal are assessed to Charlyne Alfred.

**APPEAL CONVERTED TO WRIT APPLICATION; WRIT DENIED.**

CHARLYNE R. ALFRED

VERSUS

JOSEPH J. TRAPP, ET AL.

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

NO. 2021 CA 0563

WRC

CHUTZ, J., agreeing in part and dissenting in part.

I agree with the portion of the majority opinion converting plaintiff's appeal to an application for supervisory writs. I disagree, however, from that portion of the opinion denying the writ application.

Since State Farm would bear the burden of proving the validity of the UM coverage form at trial, plaintiff was only required to point out the absence of factual support for at least one element essential to State Farm's defense. La. C.C.P. art. 966(D)(1). An insurer unable to prove a UM coverage form was completed before it was signed by the insured cannot meet its burden of proving the validity of the form. *Gray v. American National. Property & Casualty. Company*, 07-1670 (La. 2/26/08), 977 So. 2d 839, 849. Plaintiff's affidavit provided evidence the UM coverage form was not properly completed *before* she signed it. See *Gray*, 977 So.2d at 849. For purposes of summary judgment, a court generally must accept an affiant's affidavit as true unless it contains substantive contradictions or discrepancies that would ordinarily tend to call his credibility into doubt if presented to a fact-finder. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So.2d 764, 768-69; *Plant Performance Services, LLC v. Harrison*, 17-1286 (La. App. 1st Cir. 4/6/18), 249 So.3d 1, 8.

The majority concluded the statement in plaintiff's affidavit that she did not "knowingly" agree to lower UM limits was "substantially contradict[ed]" by the fact that she initialed the coverage form next to the section providing for lower UM

limits. I disagree with this conclusion since plaintiff's statement that she did not "knowingly" select lower UM limits is consistent with her additional statement that she merely initialed the coverage form where she was told to do so. For that reason, her initialing of the coverage form next to the section selecting lower limits does not substantively contradict her statement that she did not **knowingly** select lower UM limits. Accordingly, I believe under the general rule applicable to affidavits for summary judgment purposes, plaintiff's statement that the UM coverage form was incomplete when she signed it must be accepted as true. Further, in response to plaintiff's affidavit, State Farm failed to come forth with any evidence creating a genuine issue of material fact regarding whether the coverage form was incomplete when plaintiff signed it. See La. C.C.P. art. 977(D)(1). Given the unrebutted evidence that the coverage form was not properly completed when it was signed, State Farm is not entitled to a rebuttable presumption that plaintiff knowingly selected UM coverage limits lower than the limits of her liability coverage. See *Bagala v. Tregre*, 20-0600 (La. App. 1st Cir. 12/30/20), 319 So.3d 308, 314-15. Accordingly, I believe plaintiff was entitled to summary judgment in her favor, and I respectfully dissent from the majority's denial of her writ application.